IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASMINE REYNOLDS,<br>　　　　　Plaintiff,<br><br>v.<br><br>BELMONT BEHAVIORAL HEALTH,<br>ACADIA HEALTHCARE, INC. AND<br>JENNIFER POLEN,<br>　　　　　Defendants. | CIVIL ACTION<br><br><br><br>NO. 18-2152 |

## MEMORANDUM OPINION

*Pro se* Plaintiff Jasmine Reynolds brings this action pursuant to Title VII, 42 U.S.C. § 2000e *et seq*., and state law against Defendants Belmont Behavioral Health ("Belmont"), Acadia Healthcare, Inc. ("Acadia") and Jennifer Polen (collectively, "Defendants"). The suit stems from Plaintiff's unsuccessful application for a position with Belmont, a mental health facility. Specifically, Plaintiff asserts that her interviewer, Polen, engaged in racially insensitive behavior during the interview, and that Plaintiff was not hired in retaliation for reporting Polen's conduct. Defendants now move to dismiss Plaintiff's first amended complaint. For the reasons that follow, Defendants' motion shall be granted.

### I.　　BACKGROUND

The facts set forth in Plaintiff's first amended complaint are not completely clear, but the basic outline of events seems to be as follows. Plaintiff appeared for an interview at 10:00 a.m. on October 17, 2017, for a "CRC Senior Crisis position" with Belmont. Polen is a Belmont employee and conducted the interview. During the written portion of the interview, Polen made "use of racial[ly] offensive symbols," including a "'noose' symbol." Polen also made "use of [a] camera phone" during the interview, without Plaintiff's permission. Though not entirely apparent from the allegations, it seems that Plaintiff reported Polen's conduct during the

interview to a human resources representative at Belmont, at 4:00 p.m. on the same day as the interview, and that, on October 23, 2017, she filed a Title VII Civil Rights complaint with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff was not hired for the position. Rather, someone "less qualified and [less] experience[d] . . . got the job over Plaintiff."

Plaintiff includes a raft of disjointed allegations regarding the aftermath of these events: Plaintiff asserts that she was labeled a "rat" or "whistleblower" by the School District (which may have been her employer for some period of time); that her "Instagram account was hacked and people were added . . . that Plaintiff [had] never seen before"; that she went to a swimming pool with her young son, where she was "target[ed] by a family" that "attempted to dr[o]wn" her son; that she was unable to rent an apartment because the landlord had "heard negative things about Plaintiff"; that she found "foil in her shake at Wawa in Cherry Hill, PA." She alleges that she saw "a black doll hung with a 'noose' [on] a tree in a park"; that she "was given a bad pizza at Mario Brothers Pizza," and had a medical reaction; that the "Philadelphia Parking Authority sen[t] tickets to an out of state address in California [where] Plaintiff never lived to further sabotage [her] driving record"; that she "was told to resign from work at [a] mental health clinic on June 25, 2018"; and that she "can't drive without . . . being followed or harassed and even a target to be an experiment for the 'Escape Room Theory.'"

Plaintiff first filed this action on March 29, 2018 in state court. Defendants removed to federal court on May 22, 2018, and filed a motion to dismiss. Following a conference with the parties, the Court dismissed Plaintiff's complaint and granted her an opportunity to file an amended complaint. Plaintiff filed her first amended complaint on August 20, 2018, asserting a federal claim of Title VII retaliation and states claims of negligence, defamation, and a violation of Pennsylvania's whistleblower law. Defendants now move to dismiss.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal punctuation omitted). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). A complaint is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III. DISCUSSION

Where, as here, the plaintiff proceeds *pro se*, the Court "has an obligation to construe the complaint liberally," *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009), and must "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name," *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999). However, there are limits to the Court's procedural flexibility: "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citations omitted).

3

### A. Title VII Retaliation

Title VII provides that "[i]t shall be an unlawful employment practice for an employer. . . to fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2 (a). Title VII also includes a retaliation provision:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3 (a). To establish a prima facie case of retaliation under Title VII, a plaintiff must plead that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006), *as amended* (Sept. 13, 2006) (internal quotation marks omitted).

As to the first prong—protected activity—not every complaint or report entitles its author to protection from retaliation under Title VII. *See Burlington N. & Santa Fe Ry.*, 548 U.S. 53, 68 (2006) (noting that Title VII does not "set forth a general civility code for the American workplace") (internal quotation marks omitted). Rather, only complaints about discrimination prohibited by Title VII—that is, discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e–2—constitute "protected activity." *See Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701–02 (3d Cir. 1995). Thus, for a complaint to amount to "protected activity," it must implicate an employment practice made illegal by Title VII. *See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006).

4

"The employee must have an 'objectively reasonable' belief that the activity s/he opposes constitutes unlawful discrimination under Title VII." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008). "To put it differently, if no reasonable person could have believed that the underlying incident complained about constituted unlawful discrimination, then the complaint is not protected." *Id.*

To satisfy the third prong—causation—"at the prima facie stage the plaintiff must produce evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse employment action." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 259 (3d Cir. 2017) (internal punctuation omitted). "A plaintiff may rely on a broad array of evidence to demonstrate the causal link between the protected activity and the adverse employment action taken." *Id.* at 260 (internal punctuation omitted). For example, "temporal proximity between the protected activity and the termination can be itself sufficient to establish a causal link." *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004). However, there must be timing that is "unusually suggestive of retaliatory motive," or "other evidence of retaliation" "before a causal link will be inferred." *Id.*

Plaintiff's allegations fail to establish a prima facie claim of Title VII retaliation. First, the allegations do not suffice to establish that Plaintiff was engaged in protected activity. To show that her complaint to human resources and the EEOC constituted "protected activity," Plaintiff must plead allegations indicating that, based on what occurred in the interview, she held an "objectively reasonable" belief that Defendants were engaged in unlawful discrimination. *Wilkerson*, 522 F.3d at 322. However, Plaintiff does not include factual allegations setting out what happened in the interview. Plaintiff alleges that a noose symbol was shown to her during the written portion of the interview, and that Polen used a camera phone—but Plaintiff does not

5

set forth any further detail explaining what transpired, what the written portion of the interview consisted of, what exactly was shown to her, how the noose was presented, or what was said. Defendants, for their part, do not deny that a noose did appear in the interview, but assert that it was part of a hypothetical given to all applicants regarding suicidal patients at the Belmont mental health facility.

Of course, at the pleadings stage, the Court must resolve all factual disputes in favor of Plaintiff. However, because Plaintiff does not include any further factual detail, her allegations are insufficient to create more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. That is to say, in the absence of further factual material, Plaintiff has not sufficiently alleged that she held an objectively reasonable belief that Defendants were engaged in racially discriminatory conduct based on what occurred in the interview. *See Wilkerson*, 522 F.3d at 322. While a noose is undoubtedly a charged symbol, the fact that a noose appeared in the written portion of an interview for a position in a mental health facility—without any further context—is not enough to permit the Court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Similarly, Plaintiff's assertion that Polen used a camera—without further factual allegations—does not support an inference of racial discrimination. Even drawing all reasonable inferences in Plaintiff's favor, these allegations are not sufficient indication that Plaintiff engaged in protected activity by reporting what occurred in the interview.

Further, Plaintiff has not adequately pled a causal connection between the report and Belmont's decision not to hire her. She argues that the failure to hire her must have been in retaliation for her complaints, but she does not provide any factual statements to buttress this assertion. *See id.* ("Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation. . . . [A] complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement.") (internal punctuation omitted).  Plaintiff does not include any allegations regarding when the decision was made not to hire her, or when she was informed of the decision, and thus she has not set forth factual material indicating that "the timing of the alleged retaliatory action [was] unusually suggestive of retaliatory motive." *Williams*, 380 F.3d at 760.  Further, if the decision not to hire Plaintiff was made *before* she made her complaints, then Plaintiff cannot establish the required causation. *See Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 516 (3d Cir. 2004) (observing that it is not possible to meet the retaliation standard when the adverse action precedes the protected activity).  Given that the interview took place at 10:00 a.m., and Plaintiff made her first complaint the same day at 4:00 p.m., it is not clear whether the decision not to hire Plaintiff was made before or after her first complaint.

Beyond timing, the first amended complaint is devoid of any other allegations that might suggest causation.  Though Plaintiff asserts that she was "qualified" and has many years of relevant experience, she does not allege any information about what the position was, what qualifications were needed for that position, or what else may have occurred during her interview that may have demonstrated that she was a strong candidate for the position. *Cf. Waris v. Heartland Home Healthcare Servs., Inc.*, 365 F. App'x 402, 404 (3d Cir. 2010) (to show Title VII discrimination for failure to hire, plaintiff must show that she is qualified for the position and was rejected despite being qualified).  Thus Plaintiff's allegations are insufficient to show more than "a sheer possibility," *Iqbal*, 556 U.S. at 678, that her reports were the "likely reason" for Belmont's decision not to hire her, *Carvalho-Grevious*, 851 F.3d at 259.

Finally, Plaintiff cannot bring a Title VII claim against Polen, because Title VII does not create liability for individual employees. *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d

1061, 1077-78 (3d Cir. 1996) (en banc). Similarly, Plaintiff has not included any allegations against Acadia. Though Acadia is the parent corporation of Belmont, liabilities do not automatically transfer between such entities. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 341, 344 (3d Cir. 2010). Thus, in the absence of allegations against Acadia, Plaintiff has not alleged a claim against that entity.

Accordingly, Plaintiff's Title VII claim must be dismissed.[1]

### B. State Law Claims

Plaintiff asserts three additional state law claims: negligence, defamation, and a whistleblower claim. None are viable: Plaintiff has not set forth allegations that would bear upon the elements of each of those claims—much less "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, rather than review each claim in detail, the Court notes that it will decline to exercise supplemental jurisdiction over any state law claim in the absence of a viable federal claim or diversity jurisdiction. *See Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).

---

[1] Defendants also argue that dismissal is warranted because Plaintiff has failed to (1) timely file this action, and (2) adequately exhaust administrative remedies as against Acadia. Before a plaintiff can bring a Title VII action, she must exhaust her administrative remedies, typically by filing a charge with the EEOC and receiving a right-to-sue letter. 42 U.S.C. § 2000e–5(e)(1); *Burgh v. Borough Council of the Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001). Following receipt of the right-to-sue letter, a plaintiff has 90 days to file any Title VII claim in court. 42 U.S.C. § 2000e–5(e)(1); *Burgh*, 251 F.3d at 470. Here, as noted, Plaintiff filed suit on March 29, 2018. She attached to her complaint a right-to-sue letter from the EEOC, dated January 3, 2018, naming "Community Behavioral Health" as the defendant entity. Defendants assert that this is not the correct right-to-sue letter, and attach another right-to-sue letter, dated November 6, 2017, which names "Behavioral Hospital" as the defendant entity. If the letter dated January 3, 2018 does in fact pertain to a charge against Belmont and Acadia, then Plaintiff timely filed this suit. If, however, the November 6, 2017 letter is the correct document, or if neither letter pertains to the Title VII claim Plaintiff asserts here, then Plaintiff will have failed to properly exhaust administrative remedies and timely file this suit. Plaintiff alleges that she has been in contact with a representative of the EEOC, who has acknowledged that her right-to-sue letter named the wrong entity and said that he would correct the error. Because, at this stage, the Court must accept as true all of Plaintiff's factual statements, dismissal for failure to exhaust administrative remedies or timely file this action is not appropriate. *See Jean-Pierre v. Schwers*, 682 F. App'x 145, 147 (3d Cir. 2017) (explaining that the "timely filing of an administrative complaint is a condition precedent to bringing a discrimination suit under Title VII, governed by Federal Rule of Civil Procedure 9(c)," which creates a "modest pleading standard").

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's first amended complaint shall be dismissed without prejudice.

An appropriate order follows.

**January 24, 2019**                    **BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____
**WENDY BEETLESTONE, J.**